UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| MICHELE CASTANEDA and MANUEL CASTANEDA, Individually and as Co-Special Administrators of the ESTATE OF ANTHONY CASTANEDA, Deceased, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF BETTENDORF and WHKS & CO., INC., <br><br> Defendants. | Case No. 4:22-cv-04101-SLD-JEH |
| CITY OF BETTENDORF, <br><br> Cross-Plaintiff, <br><br> v. <br><br> WHKS & CO., INC., <br><br> Cross-Defendant. | |

ORDER

Before the Court are Defendant/Cross-Defendant WHKS & Co., Inc.'s ("WHKS") Motion to Dismiss Plaintiffs' First Amended Complaint, ECF No. 60; Motion for Leave to File Reply in Support of Motion to Dismiss the Complaint, ECF No. 78; and Motion to Dismiss City of Bettendorf's Counterclaim, ECF No. 66.  For the reasons that follow, the motion for leave to reply is GRANTED, and the motions to dismiss are DENIED.  However, the Court ORDERS Plaintiffs Michele and Manuel Castaneda to file an amended complaint properly alleging each party's citizenship by January 22, 2024.

1

## BACKGROUND[1]

On May 22, 2022, Anthony Castaneda was walking on the pedestrian walkway along the Interstate 74 ("I-74") bridge between Moline, Illinois and Bettendorf, Iowa with two friends. A motor vehicle entered onto the pedestrian walkway from Bettendorf and struck them. Anthony[2] died from his injuries four days later. Plaintiffs were appointed Co-Special Administrators of Anthony's estate.

Prior to May 22, 2022, Defendant City of Bettendorf ("the City") and WHKS "participated in and/or controlled the planning, design, construction, inspection, approvals, opening, and/or maintenance of the aforesaid pedestrian walkway." First Am. Compl. ¶¶ 17, 19, ECF No. 57. "[N]umerous national standards, criteria, and design theories for pedestrian walkways required the installation of bollards and traffic safety control systems at the entrance to pedestrian walkways," yet there was "no barrier of any kind and/or traffic safety control system" installed at the Bettendorf entrance to the I-74 walkway. *Id.* ¶¶ 21, 23.

Plaintiffs filed suit against the City and WHKS in June 2022, Compl. 1, ECF No. 4, and were granted leave to file their First Amended Complaint in June 2023, June 6, 2023 Order 7, ECF No. 56. Plaintiffs assert four claims against the City and four claims against WHKS. First, they assert under the Wrongful Death Act, 740 ILCS 180/1–2.2, that the City was negligent and breached its duty to Anthony, causing his death. First Am. Compl. ¶¶ 24–30. They also assert a claim for their own pecuniary losses based on this negligence via the Survival Act, 755 ILCS 5/27-6. *Id.* ¶¶ 38–47. Next, they assert under the Wrongful Death Act that the City acted in a

---

[1] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the nonmovant's] favor." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). Thus, the factual background is drawn from the First Amended Complaint, ECF No. 57.
[2] Because Anthony and Plaintiffs Michele and Manuel Castaneda all share the same last name, the Court refers to Anthony by his first name.

willful and wanton or grossly negligent manner, causing Anthony's death. *Id.* ¶¶ 31–37. They also assert a claim for their own losses based on the City's conduct via the Survival Act. *Id.* ¶¶ 48–57. Plaintiffs then assert these same claims against WHKS. *Id.* ¶¶ 58–89. The City filed a contribution claim against WHKS, claiming that if it is found liable to Plaintiffs, it "should be entitled to contribution from [WHKS] in an amount commensurate with its relative degree of culpability in causing the injuries or damages complained of by Plaintiffs." Answer, Affirmative Defenses & Countercl. 18–19, ECF No. 61. Though styled as a counterclaim, *id.* at 18, this is a crossclaim as it is a claim by one defendant against another defendant. *See* Fed. R. Civ. P. 13(g).

WHKS moves to dismiss Plaintiffs' claims against it and the City's crossclaim, arguing that the Court lacks personal jurisdiction over it. Mot. Dismiss First Am. Compl. 2; Mot. Dismiss Countercl. 2. Plaintiffs and the City contend the Court does have personal jurisdiction over WHKS. *See generally* Pls.' Resp., ECF No. 63; City's Resp., ECF No. 68. WHKS moves for leave to file a reply to address exhibits attached to Plaintiffs' response. Mem. Supp. Mot. Leave Reply 2, ECF No. 79.

## DISCUSSION

### I. Motion for Leave to File a Reply

For all motions other than summary judgment, "[n]o reply to the response is permitted without leave of Court." Civil LR 7.1(B)(3). "Typically, reply briefs are permitted if the party opposing a motion has introduced new and unexpected issues in his response to the motion, and the Court finds that a reply from the moving party would be helpful to its disposition of the motion." *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011). A court may also permit a reply "in the interest of completeness." *Zhan v. Hogan*, Case No.

4:18-cv-04126-SLD-JEH, 2018 WL 9877970, at *2 (C.D. Ill. Dec. 18, 2018) (quotation marks omitted).

Here, Plaintiffs provided exhibits to support their contention that the Court has jurisdiction over WHKS. To allow WHKS to address these exhibits, and in the interest of completeness, the Court GRANTS the motion for leave to reply. The Clerk is directed to file the reply, ECF No. 78-1, on the docket.

## II. Personal Jurisdiction

### a. Legal Standard

A defendant may move to dismiss an action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. While "[a] complaint need not include facts alleging personal jurisdiction," once a motion to dismiss has been filed, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (quotation marks omitted). When the district court rules on such a motion "based on the submission of written materials, without the benefit of an evidentiary hearing, . . . the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Id.* (quotation marks omitted). "[T]he party asserting jurisdiction is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983).

"A federal district court sitting in diversity must apply the personal jurisdiction rules of the state in which it sits." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015). Illinois law provides that courts may exercise personal jurisdiction up to the limits of the federal Constitution. *See* 735 ILCS 5/2-209(c) ("A court may . . . exercise jurisdiction on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United

4

States."); *see Kipp*, 783 F.3d at 697 (citing to this provision to support that "[t]he governing statute in Illinois permits its courts to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment"); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (indicating that "while . . . these two standards hypothetically might diverge in some cases," in practice, "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction"). The Due Process Clause of the federal Constitution "authorizes personal jurisdiction over out-of-state defendants when the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Kipp*, 783 F.3d at 697 (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction—general and specific. *Id*. "General jurisdiction is all-purpose; it exists only when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Id*. at 697–98 (alteration in original) (quotation marks omitted). Specific jurisdiction, meanwhile, is "case-specific; the claim must be linked to the activities or contacts with the forum." *Id*. at 698. "[T]he relationship must arise out of contacts that the defendant himself creates with the forum State," and the "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) (emphasis omitted) (quotation marks omitted). "In analyzing whether the defendant's contacts are sufficient to establish specific jurisdiction, [courts] do not employ a mechanical or quantitative test." *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) (quotation marks omitted). Courts find that specific personal jurisdiction exists "if the defendant has purposefully directed his activities at residents

of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks omitted).

### b. Analysis

Neither Plaintiffs nor the City contends that the Court has general jurisdiction over WHKS, so the question before the Court is whether it can exercise specific jurisdiction over WHKS with respect to this case. WHKS argues that it cannot because "[t]he Amended Complaint's allegations show that [Plaintiffs'] claims arise from and relate to [WHKS's] contacts with Iowa—not Illinois," and the only connection to Illinois alleged in the First Amended Complaint is the unrelated driver's negligence in hitting Anthony and his friends in Illinois. *See* Mem. Supp. Mot. Dismiss First Am. Compl. 3, 6, ECF No. 60-1. WHKS further argues that because the City's "contribution claim . . . depends on [Plaintiffs'] jurisdictional allegations," the Court lacks specific jurisdiction over it with respect to the City's claim as well. *See* Mem. Supp. Mot. Dismiss Countercl. 2, ECF No. 66-1. Plaintiffs and the City both contend that WHKS is subject to the Court's jurisdiction because it knowingly participated in the design and construction of a bridge and walkway that spanned Iowa and Illinois and thus "purposefully avail[ed] itself to and invoke[ed] the benefits of Illinois." Pls.' Resp. 2; City's Resp. 1–2.[3]

For three primary reasons, the Court finds that Plaintiffs—and, accordingly, the City— have met their burden to demonstrate that the Court can exercise specific personal jurisdiction over WHKS. First, and most importantly, the crux of Plaintiffs' claim is that WHKS was negligent or acted willfully and wantonly in the design and construction of an interstate

---

[3] No party cites to any cases with analogous facts; instead, the parties primarily rely on general principles of personal jurisdiction. *See, e.g.*, Mem. Supp. Mot. Dismiss First Am. Compl. 4–6; Pls.' Resp. 2–4, 6; City's Resp. 2– 4, 6–7. Such principles are sufficient to resolve the instant motions.

pedestrian walkway between Iowa and Illinois. *See* First Am. Compl. ¶¶ 19, 59–62, 66–69, 72–75, 82–85. The pedestrian walkway was part of a larger project of building a new I-74 bridge between Moline, Illinois and Bettendorf, Iowa. *See* WHKS's Agreement with Alfred Benesch & Co. 3, Pls.' Resp. Ex. D, ECF No. 63-5. WHKS's contract with prime consultant Alfred Benesch & Company describes the project's parameters as "reconstruction of a 7.8 mile corridor of I-74 in Scott County, Iowa and Rock Island County, Illinois," including replacement of the existing I-74 bridge over the Mississippi River and improvement of pedestrian connections. *Id.* The I-74 bridge reconstruction was conducted pursuant to an agreement between Iowa and Illinois. *See generally* Iowa/Illinois Border River Bridge Agreement, Pls.' Resp. Ex. A, ECF No. 63-2. While the contract with Alfred Benesch & Company shows that WHKS's particular role was to design and construct in Iowa, *see, e.g.*, WHKS's Agreement with Alfred Benesch & Co. 3 (noting that WHKS's tasks were for the "Iowa Side"), the contract demonstrates that WHKS knew it was participating in a larger, interstate project. WHKS cannot plausibly contend it did not understand that it was designing and building part of a bridge and pedestrian walkway that would necessarily connect with Illinois. *Cf.* Pls.' Resp. 3 ("WHKS knew that its bridge design and construction activities for an interstate bridge—the subject of this litigation—would (literally) be connected to, and direct traffic at, the State of Illinois and its residents.").

Relatedly, WHKS agreed to participate in this interstate construction project and derived a benefit from its participation—it was compensated for its work. *See* WHKS's Agreement with Alfred Benesch & Co. 7 (indicating that WHKS would receive its costs plus a fixed fee for its work under the agreement). It would "be unfair to allow [WHKS] to escape having to account in other States for consequences that ar[o]se proximately from" its activities in constructing part of an interstate bridge. *Burger King*, 471 U.S. at 474. "[T]he Due Process Clause may not readily

7

be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Id.*

Lastly, for over six years, WHKS attended meetings about the project run by the Illinois Department of Transportation and the Iowa Department of Transportation. *See generally* Project Management Team Meeting Attendance Rosters, Pls.' Resp. Ex. E, ECF No. 63-6 (spanning 2010 to 2016); *see also* WHKS's Agreement with Alfred Benesch & Co. 3 (indicating that the project included "managing/coordinating activities with other Consultants along with the Iowa and Illinois Departments of Transportation for the entire corridor from the final design through construction"). While WHKS argues these meetings do not support jurisdiction because the meetings occurred at the Iowa Department of Transportation, *see* Reply 5, the Court disagrees. The attendance rosters indicate that the location of the meeting was a conference room in Iowa and video conference from multiple locations. *See, e.g.*, Apr. 13, 2011 Attendance Roster, ECF No. 63-6 at 1–2. The rosters do not indicate who attended in person versus via video conference, *e.g., id.*, but, regardless, the importance of these meetings is that they were conducted, at least in part, by the Illinois Department of Transportation. The rosters show that WHKS attended many meetings with an Illinois state agency and Illinois government officials about the project. Even if conducted by video, such meetings are akin to telephone calls and constitute contacts with Illinois. *Cf. Felland v. Clifton*, 682 F.3d 665, 676 & n.3 (7th Cir. 2012) (counting letters, phone calls, and emails as part of the defendant's contacts with the forum state).

The Court concludes that it does not offend notions of fair play and substantial justice to exercise personal jurisdiction over WHKS. WHKS participated in designing and constructing an interstate bridge spanning Iowa and Illinois. It coordinated and met with Illinois government officials regarding the project. The bridge and walkway are, literally, connected to Illinois and

8

direct people and traffic to Illinois. It should have been obvious to WHKS that its actions, even if physically limited to the Iowa portions of the bridge and walkway, could have caused injury in Illinois such that WHKS should have "reasonably anticipate[d] being haled into court" in Illinois for such injuries. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

### III.   Subject Matter Jurisdiction

Nevertheless, the Court has identified a defect in Plaintiffs' allegations supporting subject matter jurisdiction, which it must raise. *See Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) ("[C]ourts must consider [challenges to subject matter jurisdiction] *sua sponte*."). Plaintiffs allege that the Court has diversity and supplemental jurisdiction over this case. First Am. Compl. ¶ 9 (citing 28 U.S.C. §§ 1332(a)(1), 1367(a)). The party seeking to invoke diversity jurisdiction bears the burden of establishing it. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). That party must identify the citizenship of each party to the litigation. *See Thomas v. Guardsmark, LLC*, 487 F.3d 531, 533–34 (7th Cir. 2007). For natural persons, citizenship "depends on domicile—that is to say, the state in which a person intends to live over the long run." *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012). When a party acts as "the legal representative of the estate of a decedent," it is "deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2).

Plaintiffs sue on behalf of themselves and as representatives of Anthony's estate. However, they allege only their and Anthony's residences. First Am. Compl. ¶¶ 3–4. Allegations of residency do not suffice to establish citizenship. *Heinen*, 671 F.3d at 670. Rather than dismiss the case, the Court will allow Plaintiffs to amend their defective allegations. *See Leaf v. Sup. Ct. of Wis.*, 979 F.2d 589, 595 (7th Cir. 1992) ("[L]eave to amend defective allegations of subject matter jurisdiction should be freely given." (quotation marks omitted)).

Accordingly, Plaintiffs are ordered to file an amended complaint that properly alleges each party's citizenship by January 22, 2024.

## CONCLUSION

Accordingly, Defendant/Cross-Defendant WHKS & Co., Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint, ECF No. 60, and Motion to Dismiss City of Bettendorf's Counterclaim, ECF No. 66, are DENIED.  The Motion for Leave to File Reply in Support of Motion to Dismiss the Complaint, ECF No. 78, is GRANTED.  The Clerk is directed to file the reply, ECF No. 78-1, on the docket.  Plaintiffs Michele and Manuel Castaneda are ORDERED to file an amended complaint that sufficiently alleges the citizenship of each party by January 22, 2024.

Entered this 8th day of January, 2024.

s/ Sara Darrow<br>
SARA DARROW<br>
CHIEF UNITED STATES DISTRICT JUDGE